IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| TRACY MITCHELL, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. 3:16cv837-KKD |
| ) | [WO] |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Before the court is Tracy Mitchell's *pro se* motion for relief under 28 U.S.C. § 2255. Doc. 1.[1] After considering the parties' submissions, the record, and the applicable law, the court finds that Mitchell's § 2255 motion should be denied without an evidentiary hearing. Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts*.

**I.   INTRODUCTION**

On March 30, 2015, Mitchell pled guilty under a plea agreement to one count of conspiring to defraud the United States with respect to claims, in violation of 18 U.S.C. § 286; wire fraud, in violation of 18 U.S.C. § 1343; and aggravated identity theft, in violation of 18 U.S.C. § 1028A. Mitchell's convictions stemmed from her role as a leader of a massive scheme to obtain tax refunds by filing fraudulent tax returns using stolen identities. Her plea agreement contained a provision by which she waived her right to appeal or

---

[1] Unless otherwise noted, references to document numbers ("Doc. No(s).") are to the pleadings, motions, and other materials in the court file as designated by the Clerk of Court on the docket sheet in this civil action. Pinpoint citations are to the page of the electronically filed document in the court's CM/ECF filing system, which may not correspond to pagination on the hard copy of the document presented for filing.

collaterally attack her convictions and sentence, with exceptions for claims of ineffective assistance of counsel and prosecutorial misconduct.

Following a sentencing hearing on August 7, 2015, the district court sentenced Mitchell to 159 months in prison, consisting of concurrent terms of 120 months on the conspiracy count and 135 months on the wire fraud and a term of 24 months on the identity theft count, to run consecutively.

After Mitchell filed a *pro se* notice of appeal, counsel from the Federal Defender's Office was appointed to represent her on appeal. After the Federal Defender consulted with Mitchell, Mitchell moved to dismiss her appeal, and the appeal was dismissed.

In December 2017, the United States filed a motion to reduce Mitchell's sentence under Federal Rule of Criminal Procedure 35(b), based on Mitchell's substantial assistance in the prosecution of other persons. That motion was granted, and on December 15, 2017, the district court reduced Mitchell's term of imprisonment to 135 months.[2]

On October 18, 2106, Mitchell filed this § 2255 motion[3] asserting claims that her counsel was ineffective for (1) failing to properly investigate her case to obtain information showing she was not physically present at home, but instead was at work, when many of the fraudulent tax returns were filed from her home; (2) disclosing her privileged statements in a meeting with her codefendants' lawyers and failing to schedule a second proffer with the Government; (3) failing to present successful arguments at sentencing

---

[2] *See* Criminal Case No. 3:14cr15-KKD, Doc. Nos. 534 & 538.

[3] The reduction of Mitchell's sentence pursuant to the Government's Rule 35(b) motion took place while Mitchell's § 2255 motion was pending.

2

regarding the loss amount attributed to her and regarding the abuse-of-trust and leadership-role enhancements applied to her; and (4) failing to pursue an issue on appeal regarding the loss amount attributed to her. Doc. No. 1 at 4–8; Doc. No. 2 at 9–22.

## II. DISCUSSION

### A. General Legal Standard

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments under 28 U.S.C. § 2255 are limited. A prisoner may secure relief under § 2255 if the court imposed a sentence that (1) violated the constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent."

### B. Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel is evaluated against the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). First, a petitioner must show

that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 689. Second, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. *See Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable. *Chandler*, 218 F.3d at 1314 (internal quotation marks omitted). The court will "avoid second-guessing counsel's performance: It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id*. (internal quotation marks and brackets omitted). "Given the strong presumption in favor of competence, the petitioner's burden of persuasion—though the presumption is not insurmountable—is a heavy one." *Id*.

As noted, under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not

4

deprive the defendant of any substantive or procedural right to which the law entitles him." *Id*. at 372.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Id*. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

A criminal defendant's right to effective assistance of counsel continues through direct appeal. *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Ineffective assistance of appellate counsel may be shown if the movant can "establish ... that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker[.] Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Mayo v. Henderson*, 13 F.3d 528, 533 (2nd Cir. 1994).

### 1. *Counsel's Failure to Investigate*

Mitchell claims her trial counsel rendered ineffective assistance by failing to properly investigate her case to obtain information showing she was not physically present at home, but instead was at work, when many of the fraudulent tax returns were filed from her home. Doc. No. 1 at 4; Doc. No. 2 at 9. Mitchell argues that her counsel should have subpoenaed attendance records from her employer to support such a claim, which she says

would have resulted in a smaller amount of loss being attributed to her at sentencing.[4]  Doc. No. 2 at 9.

Mitchell's argument is predicated on her apparent belief that the district court should have held her responsible only for the returns she personally filed.  However, a court may hold participants in a conspiracy responsible for the losses resulting from the reasonably foreseeable acts of coconspirators in furtherance of the conspiracy.[5]  *United States v. Mateos*, 623 F.3d 1350, 1370 (11th Cir. 2010).  Mitchell admitted in her plea agreement that she and her coconspirators filed fraudulent tax returns from her home, and the evidence established that she was aware that her coconspirators were filing fraudulent tax returns from her home.  Doc. No. 12-3 at 10, ¶ 19.f.  Thus, those acts by her coconspirators were reasonably foreseeable and attributable to her as part of the conspiracy.[6]

---

[4] Under § 2B1.1(b)(1) of the Sentencing Guidelines, the offense level for a defendant convicted of certain economic fraud offenses is subject to a specific offense characteristic enhancement if the loss from the criminal conduct exceeded $5,000, with the extent of the enhancement determined by the amount of the loss.  U.S.S.G. § 2B1.1(b)(1).  For purposes of § 2B1.1(b)(1), "loss is the greater of actual loss or intended loss."  U.S.S.G. § 2B1.1, cmt. n.3(A).

[5] The Sentencing Guidelines direct the district court to consider a defendant's relevant conduct, not merely the charged conduct, in calculating loss.  *United States v. Foley*, 508 F.3d 627, 633 (11th Cir. 2007).  *See* U.S.S.G. § 1B1.3(a)(1)(A) & (B) (relevant conduct includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant" and "in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity").

[6] Mitchell makes no claim she was unaware that her coconspirators were filing fraudulent returns from her home.  Mitchell also stole the personal identification information of nearly 100 soldiers through records accessible at the military hospital where she worked, and that personal information was used extensively on false tax returns filed in the conspiracy, a use that was reasonably foreseeable to Mitchell.

(continued…)

At sentencing, both the Government and the U.S. Probation Office argued that the loss attributable to Mitchell was approximately $18 million, the total amount claimed through the fraudulent tax returns filed in the conspiracy.[7]  Doc. No. 12-7 at 13 & 29–30; Doc. No. 12-5 at 18, ¶ 57, & 23, ¶ 71.  Mitchell's counsel, however, advocated for limiting the loss attributable to Mitchell to approximately $2.3 million, the amount claimed through fraudulent tax returns filed from Mitchell's home.  Doc. No. 12-7 at 11–12; Doc. No. 12-8 at 3–4.  In making this argument in his objections to the PSI, Mitchell's counsel noted that several other members of the conspiracy filed returns from Mitchell's home and that those returns were included in the $2.3 million.  Doc. No. 12-8 at 3 n.2.

The district court rejected the argument that the loss attributable to Mitchell should be limited to the $2.3 million in fraudulent tax returns filed from Mitchell's home, finding that the loss attributable to Mitchell exceeded $2.5 million, an amount including the fraudulent tax returns filed from Mitchell's home and loss amounts generated through other aspects of the conspiracy, including Mitchell's recruitment of a postal employee and her cashing of fraudulent refund checks.[8]  Doc. No. 12-7 at 29–30.

---

[7] The PSI indicated that the total amount of the refunds claimed through fraudulent tax returns filed in the conspiracy was $18,963,998. Doc. No. 12-5 at 18, ¶ 57, & 23, ¶ 71. Of those claims, the IRS paid out a total of $7,332,397 in refunds. *Id.* at 18, ¶ 57, & 30–31, ¶ 116.

[8] Applying § 2B1.1(b)(1) of the Sentencing Guidelines, the district court imposed an 18-level enhancement to Mitchell's offense level. *See* U.S.S.G. § 2B1.1(b)(1)(J), (K) (providing for 18-level specific offense characteristic enhancement where the loss is more than $2,500,000 but less than $7,000,000). Had Mitchell's counsel succeed in persuading the district court that the loss amount attributable to Mitchell was limited to $2.3 million, the enhancement for Mitchell under § 2B1.1(b)(1) would have been 16 levels. *See* U.S.S.G. § 2B1.1(b)(1)(I), (J) (providing for 16-level specific offense characteristic enhancement where the loss is more than $1,000,000 but less than $2,500,000). Had the Government's argument prevailed, with the district court finding $18 million in loss attributable to Mitchell, the court would have imposed a

(continued…)

Thus, although the district court was aware that other members of the conspiracy in addition to Mitchell filed fraudulent tax returns from Mitchell's home, the court still attributed the loss amount from those returns to Mitchell. Any further investigation by counsel—for example, by subpoenaing Mitchell's work-attendance records—into which portion of the $2.3 million in fraudulent returns were personally filed by Mitchell would not have affected the loss amount the court attributed to Mitchell. Because Mitchell was liable for the reasonably foreseeable acts of her coconspirators, the strategic decision by her counsel to try to limit the loss attributed to her to the returns filed from her home was professionally reasonable. Even if the strategy to pursue one line of defense over another is unsuccessful, the decision will be held ineffective only if it was so patently unreasonable that no competent lawyer would have chosen it. *Adams v. Wainwright*, 709 F.2d 1443, 1145 (11th Cir. 1983). Trial counsel did not pursue a patently unreasonable strategy.

Mitchell is essentially trying to reargue the merits of the district court's calculation of the loss attributable to her in the guise of an allegation of ineffective assistance of counsel. Mitchell demonstrates neither deficient performance nor resulting prejudice in her trial counsel's failure to subpoena work-attendance records from her employer or to conduct further investigation along these lines. Consequently, she is entitled to no relief on this claim of ineffective assistance of counsel.

### 2.   *Disclosure of Privileged Statements and Failure to Schedule Second Proffer*

---

20-level enhancement to Mitchell's offense level. *See* U.S.S.G. § 2B1.1(b)(1)(K), (L) (providing for 20-level specific offense characteristic enhancement where the loss is more than $7,000,000 but less than $20,000,000).

Mitchell claims that her trial counsel rendered ineffective assistance by disclosing her privileged statements in a meeting with her codefendants' lawyers. Doc. No. 1 at 5; Doc. No. 2 at 10–12. She maintains that her counsel's actions in this regard amounted to a conflict of interest that adversely affected her sentence. Doc. No. 2 at 12.

Mitchell alleges that during a scheduled meeting with her codefendants Latasha Mitchell and Talarious Paige and their attorneys, her counsel "disclosed personal things which were not known to the codefendants … about evidence, the case, and the roles of the codefendants." Doc. No. 2 at 12. She says that her counsel's disclosures to the other attorneys "were then brought up at Latasha Mitchell's and Talarious Paige's sentencing and this adversely affected Tracy Mitchell's case."[9] *Id.*

Mitchell does not specify what privileged statements of hers were disclosed by her counsel, or how the alleged disclosures specifically affected her case. Her bare allegation that she was prejudiced by her counsel's disclosure of unspecified privileged statements is too conclusory in nature to warrant relief or a hearing on this claim of ineffective assistance of counsel. Conclusory or unsupported allegations cannot support an ineffective assistance claim. *Hill v. Lockhart*, 474 U.S. 52 (1985). *See also Caderno v. United States*, 256 F.3d 1213, 1217 (11th Cir. 2001) (vague, conclusory allegations in a § 2255 motion are insufficient to state a basis for relief); *Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012) (bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test); *Tejada v. Dugger,* 941 F.2d 1551, 1559 (11th

---

[9] Mitchell's codefendants' sentencing hearings took place immediately preceding hers on August 7, 2015.

Cir. 1991) ("unsupported allegations, conclusory in nature and lacking factual substantiation" are an insufficient basis for relief); *Saunders v. United States,* 278 F. App'x 976, 979 (11th Cir. 2008) (petitioner must allege "reasonably specific, non-conclusory facts with respect to his claim such that there was a reasonable probability sufficient to undermine confidence in the outcome.").

As a second alleged instance of actions by her trial counsel that amounted to a "conflict of interest," Mitchell claims that because of a dispute over the payment of fees, her trial counsel did not schedule a second proffer with the Government, costing her an opportunity to reduce her sentence based on further cooperation with the Government. *See* Doc. No. 1 at 5; Doc. No. 2 at 12.

In an affidavit addressing this allegation, Mitchell's former trial counsel states that, although a second proffer was scheduled to take place after Mitchell entered her guilty plea, Mitchell abruptly cancelled the proffer against his advice. Doc. No. 7 at 4. With his affidavit, Mitchell's counsel submits a copy of a letter he sent to Mitchell noting that Mitchell had informed his office that she no longer wanted to give the second proffer and advising Mitchell that it was not in her best interest to cancel the proffer. Doc. No. 7-3.

In a sealed supplemental response submitted by the Government, the Government maintains that Mitchell's claim is moot because, after she filed her § 2255 motion, a second proffer with Mitchell took place, and because of information Mitchell provided during that second proffer, the Government filed a motion to reduce Mitchell's sentence under Federal Rule of Criminal Procedure 35(b), which the district court granted. Doc. No. 13 at 1. In granting the Rule 35(b) motion, the district court reduced Mitchell's term of imprisonment

10

to 135 months.[10] Under the circumstances, the undersigned finds that Mitchell fails to demonstrate prejudice resulting from any actions by her counsel and agrees with the Government that this ineffective-assistance claim by Mitchell is moot.

### 3. Counsel's Arguments at Sentencing

Mitchell contends that her trial counsel was ineffective for failing to present successful arguments at sentencing regarding the loss amount attributed to her and regarding the abuse-of-trust and leadership-role enhancements applied to her. Doc. No. 1 at 7; Doc. No. 2 at 13–21.

#### a. Loss Amount

Mitchell says that her trial counsel rendered ineffective assistance in challenging the loss amount attributed to her for sentencing purposes. Doc. No. 1 at 7; Doc. No. 2 at 15–18.

At sentencing, Mitchell's trial counsel vigorously sought a lower loss amount and, as noted above, argued for limiting the loss amount attributable to Mitchell to approximately $2.3 million in fraudulent returns filed from Mitchell's home. Doc. No. 12-7 at 11–12; Doc. No. 12-8 at 3–4. After taking extensive testimony, the district court found that Mitchell was involved in more activity than just the fraudulent returns filed from her home. For instance, the court found Mitchell recruited a postal employee who obtained fraudulent tax refund checks from the conspiracy and provided those checks to Mitchell. Doc. No. 12-7 at 30. The tax returns that generated those checks were filed from not only

---

[10] Criminal Case No. 3:14cr15-KKD, Doc. Nos. 534 & 538.

Mitchell's home, but also from the homes of other coconspirators. *Id.* at 18–19. Mitchell was also involved in cashing refund checks generated from fraudulent returns filed from her home and other locales. *Id.* at 20. Mitchell's cell phone also contained numerous text messages about the cashing of checks, including checks generated from fraudulent returns filed by her coconspirators. *Id.* at 19–20.

The evidence supported the district court's finding that Mitchell was involved with fraudulent returns claiming over $2.5 million. Mitchell fails to identify a plausible argument or evidence not presented by her counsel reasonably likely to change the district court's calculation of the loss amount attributable to her.[11] Because she fails to show either deficient performance by counsel or resulting prejudice, Mitchell may not win relief based on this claim of ineffective assistance of counsel.

  b. <u>Leadership Enhancement</u>

Mitchell claims that her trial counsel was ineffective in arguing against the leadership enhancement applied to her at sentencing. Doc. No. 1 at 7; Doc. No. 2 at 19–20.

Section 3B1.1(a) of the Sentencing Guidelines provides that a defendant's offense level should be increased by four levels for his role in the offense "[i]f the defendant was an organizer or leader of criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). At sentencing, the Government requested a

---

[11] As with her previously discussed claim regarding counsel's failure to subpoena her work attendance records, Mitchell here is essentially rearguing the merits of the district court's calculation of loss in the guise of a claim of ineffective assistance of counsel.

four-level enhancement under § 3B1.1 based on Mitchell being a leader and organizer of the conspiracy. After taking extensive testimony, the district court agreed with the Government, finding that Mitchell was "an organizer/leader and that the four-level enhancement is called for." Doc. No. 12-7 at 34. The court stated that Mitchell "was clearly keeping up with what was going on and directing how it was to proceed." *Id.*

In her § 2255 motion, Mitchell claims that Keshia Lanier was the leader of the conspiracy and that she merely followed Lanier's leadership. Doc. No. 2 at 19. But Mitchell's counsel made this same argument at sentencing, where he maintained that Lanier was the leader and that the tax-refund scheme was up and running (under Lanier's leadership) when Mitchell joined the conspiracy. Doc. No. 12-7 at 31–33. The district court rejected this argument.

Mitchell also suggests that her counsel should have disputed the Government's argument at sentencing that a text message to her from coconspirator Sharonda Johnson asking Mitchell for directions on cashing checks and what to do with the proceeds was evidence of Mitchell's leadership role. Doc. No. 2 at 19. Mitchell claims that the text message concerned money of hers that had nothing to do with the conspiracy. *Id*. at 19–20. Even taking this claim by Mitchell as true, there was abundant other evidence to support the finding that she was an organizer/leader in the conspiracy. Further, any argument to this effect by Mitchell's counsel would have at most created a credibility issue for the district court to resolve. Finally, Mitchell does not say that she informed her counsel of the allegedly innocent explanation of the text message Johnson sent her.

Mitchell demonstrates neither deficient performance by counsel in arguing against the leadership enhancement nor resulting prejudice. Therefore, Mitchell is entitled to no relief on this claim.

      c.    <u>Abuse-of-Trust Enhancement</u>

Mitchell claims that her trial counsel was ineffective for advising her to disclose in a proffer that she stole the personal identification information of soldiers through records accessible at the military hospital where she worked. Doc. No. 1 at 7; Doc. No. 2 at 20–21. According to Mitchell, her counsel told her that such a disclosure could not be used to increase her sentence, when in fact it was used to increase her sentence through imposition of an abuse-of-trust enhancement.

Section § 3B1.3 of the Sentencing Guidelines provides in pertinent part:

> If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels. This adjustment may not be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic. If this adjustment is based upon an abuse of a position of trust, it may be employed in addition to an adjustment under §3B1.1 (Aggravating Role).

U.S.S.G. § 3B1.3. Mitchell's PSI, which was adopted by the district court, found that the § 3B1.3 abuse-of-trust enhancement applied to Mitchell because she abused her position of trust by stealing the personal identification information of nearly 100 soldiers through records accessible at the military hospital where she worked. Doc. No. 12-5 at 24, ¶ 76; Doc. No. 12-7 at 38.

The evidence that Mitchell stole the soldiers' personal identification information did not originate from Mitchell's proffer, which took place in March 2015, but was discovered

well over a year before the proffer. As reflected in the PSI, federal law enforcement agents discovered sometime in 2013 that Mitchell worked at Fort Benning's military hospital and had access to the personal identification information of soldiers. Doc. No 12-5 at 10, ¶ 23. Based on evidence that Mitchell had filed nearly 100 fraudulent returns from her home using personal identification information stolen from military personnel, a search warrant was obtained and executed on her home in December 2013. *Id*. An indictment was filed against Mitchell in February 2014. The indictment alleged that Mitchell was employed at the hospital at Fort Benning; that through her employment, Mitchell had access to the means of identification of military personnel; that Mitchell stole the means of identification; and that Mitchell used this stolen information to file fraudulent tax returns. Doc. No. 12-1. Likewise, the superseding indictment filed in May 2014 made the same allegations. Doc. No. 12-2.

It is clear, then, that Mitchell only confirmed at the March 2015 proffer what the prosecution already knew—that she stole the personal identification information of soldiers through records accessible at the military hospital where she worked. Failing to show either deficient performance by counsel or resulting prejudice, Mitchell is not entitled to relief based on this claim of ineffective assistance of counsel.

    **4.**    ***Failure to Pursue Issue on Appeal***

Mitchell contends that her appellate counsel rendered ineffective assistance by failing to pursue an issue on appeal regarding the loss amount attributed to her and instead advising Mitchell to dismiss her appeal. Doc. No. 1 at 8; Doc. No. 2 at 22. According to

Mitchell, if appellate counsel had persisted in the appeal, she could have argued that the district court erred in its calculation of the loss attributed to her. *Id*.

Mitchell filed a *pro se* notice of appeal, and her appeal was docketed in the Eleventh Circuit. The appellate court appointed counsel from the Federal Defender's Office to represent Mitchell on appeal. Subsequently, upon advice from this counsel, Mitchell moved to dismiss her appeal and her appeal was dismissed.

In an affidavit filed with this court, Mitchell's appellate counsel states that after she spoke to Mitchell on several occasions, she advised Mitchell not to pursue her appeal. Doc. No. 6-1 at 4. Appellate counsel recommended that Mitchell instead pursue any claims in a § 2255 petition. *Id.* Regarding Mitchell's expression of interest in raising sentencing issues on direct appeal, appellate counsel avers that her recommendation to Mitchell was based in part on the existence of a waiver provision in Mitchell's plea agreement, whereby Mitchell waived her right to appeal or collaterally attack her convictions and sentence, with exceptions for claims of ineffective assistance of counsel and prosecutorial misconduct. *Id.* Appellate counsel further avers that she advised Mitchell that claims of ineffective assistance of counsel would be more appropriately raised in a § 2255 motion.

Mitchell's attempt to appeal the merits of the district court's loss determination would have been barred by the appeal waiver in her plea agreement. *See United States v. Johnson*, 541 F.3d 1064, 1066 (11th Cir. 2008); *United States v. Bushert*, 997 F.2d 1343, 1350 (11th Cir. 1993). To enforce such a waiver, the Government must demonstrate either that (1) the court specifically questioned the defendant about the waiver during the change of plea colloquy, or (2) the record shows that the defendant otherwise understood the full

16

significance of the waiver. *Bushert,* 997 F.2d at 1351. At Mitchell's change of plea hearing, the magistrate judge who conducted the plea colloquy specifically questioned Mitchell about the waiver provision and confirmed that she understood its terms. Doc. No. 12-4 at 8–10. Thus, the record reflects—and Mitchell does not disprove—that Mitchell's appeal waiver was knowing and voluntary. *Bushert,* 997 F.2d at 1351.

Because any attempt by Mitchell to challenge the merits of the district court's loss determination on direct appeal would have been barred by the appeal waiver, appellate counsel's advice that Mitchell not pursue an appeal presenting this claim was professionally reasonable. Failing to show either deficient performance by counsel or resulting prejudice, Mitchell is not entitled to relief based on this claim of ineffective assistance of counsel.

### III.   CONCLUSION

For the reasons set out above, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Mitchell be DENIED and this case DISMISSED with prejudice.

It is further

ORDERED that on or before April 16, 2019, the parties may file objections to the Recommendation. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive, or general objections will not be considered.

Failure to file a written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of factual and legal issues covered in the Recommendation and waives the right of a party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc*., 996 F.2d 1144, 1149 (11th Cir. 1993).

Done, on this the 2nd day of April, 2019.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge